UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENEDICT CIPPONERI, JR., et. al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>FDIC as Receiver for COUNTY BANK, et. )<br>al., )<br>)<br>Defendants. )<br>_____ ) | CIV-F-09-0688 AWI DLB<br><br>ORDER RE: MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION |

**I. History**[1]

Plaintiff Benedict Cipponeri, Jr., was an employee of Evergreen Convalescent Hospital. On December 12, 2006, he visited a County Bank branch in Modesto, California on business for his employer. At the bank, Cipponeri fell and suffered an injury to his knee. Since that time, he has been unable to engage in employment due to his injuries. Cipponeri made a worker's compensation claim which was handled by the employer's insurance carrier, CareWest Insurance Company. Cipponeri also filed suit against County Bank on October 31, 2008, in the Stanislaus County Superior Court, alleging that County Bank negligently allowed a tile floor to remain wet and slippery, and failed to warn of the danger. On December 5, 2008, CareWest became a

---

[1] The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained therein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

1

plaintiff in intervention to the case in order to recover worker's compensation benefits it had paid to Cipponeri.

County Bank failed, and Defendant Federal Deposit Insurance Corporation ("FDIC") took over receivership of the institution on February 6, 2009.  FDIC substituted itself in place of County Bank and removed the action to federal court on April 16, 2009, on the basis of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA").  FIRREA sets up an administrative claims procedure for resolving claims against defunct banks.  Claimants must submit claims by a set deadline, FDIC must make a decision within 180 days, and the claimant can then file suit in federal court within 60 days of that decision.  FDIC asked for and was granted a stay of the case to permit completion of the administrative procedures.

FDIC set a May 14, 2009 deadline for claims against County Bank.  Cipponeri filed a claim with FDIC on April 16, 2009, and CareWest filed its claim on May 8, 2009.  On May 27, 2009, FDIC sent Cipponeri and CareWest letters asking for supporting evidence of their claims.  CareWest replied and sent evidence on July 28, 2009.  FDIC proposed, and Cipponeri agreed to, an extension of the 180 day deadline until November 14, 2009.  By the end of that deadline, Cipponeri had not sent FDIC any evidence.  FDIC informed Magistrate Judge Beck that the administrative process was completed during a status conference on January 27, 2010; the stay was lifted and FDIC indicated to the court that it would seek dismissal for failure to exhaust administrative procedures.  Cipponeri submitted documentation to FDIC on January 29, 2010.  FDIC filed this present motion to dismiss for lack of subject matter jurisdiction due to a failure to exhaust administrative procedures on February 5, 2010.  FDIC also sent Cipponeri a letter on February 9, 2010, formally disallowing Cipponeri's claim.  Cipponeri filed an opposition to the motion to dismiss.  The matter was taken under submission without oral argument.  In briefing, FDIC clarified that it is seeking dismissal of Cipponeri's claims only; Plaintiff in Intervention CareWest's claims are unaffected by this motion.

## II. Legal Standards

Fed. R. Civ. Proce 12(b)(1) allows for a motion to dismiss based on lack of subject matter

jurisdiction. It is a fundamental precept that federal courts are courts of limited jurisdiction. Vacek v. UPS, 447 F.3d 1248, 1250 (9th Cir. 2006). Limits upon federal jurisdiction must not be disregarded or evaded. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." A-Z Int'l v. Phillips, 323 F.3d 1141, 1145 (9th Cir. 2003); General Atomic Co. v. United Nuclear Corp., 655 F.2d 968 (9th Cir. 1981). The plaintiff has the burden to establish that subject matter jurisdiction is proper. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). A Rule 12(b)(1) motion may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

When a defendant makes a factual challenge "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). The court need not presume the truthfulness of the plaintiff's allegations under a factual attack. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). Where the jurisdictional issue and the merits of the case are not factually completely intermeshed or intertwined, the court may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, including resolving factual disputes when necessary. St. Clair v. Chico, 880 F.2d 199, 201-02 (9th Cir. 1989).

**III. Discussion**

Under FIRREA, courts lack subject matter jurisdiction to hear a claim against a defunct bank taken into receivership by the FDIC unless the administrative claims process is complied with. See Intercontinental Travel Mktg. v. FDIC, 45 F.3d 1278, 1282 (9th Cir. 1994) ("No court has jurisdiction over the claim until the exhaustion of this administrative process"). That process is governed by 12 U.S.C. §1821(d) and FDIC regulations. Overall, the statute sets up the general structure (claims deadline, FDIC decision within 180 days, and federal suit within 60 days of decision) and states that "The Corporation may prescribe regulations regarding the allowance or

disallowance of claims by the receiver and providing for administrative determination of claims and review of such determination." 12 U.S.C. §1821(d)(4)(A).

Cipponeri filed his claim on April 16, 2009, before the claims bar date of May 14, 2009. See Doc. 28, Scarborough Declaration, at 4:4-6. He did so by filling out and submitting a one page Proof of Claim Form, an FDIC document marked RLS7214. See Doc. 28, Ex. E. The Form asked for basic information, most importantly, a description of the claim and total claim amount. The Form did not ask for documentation or evidence. Cipponeri completed the Form and attached the complaint in this case, which provided the description of the claim and claim amount.

Meanwhile, FDIC sent Cipponeri a letter on April 20, 2009. Doc. 28, Ex. D. It appears that Cipponeri's filing and the FDIC letter crossed paths in the post. The letter informed Cipponeri that he appeared to have a claim against the defunct County Bank, and that he had to file an administrative claim. The letter is confusing as it states the claims bar date was May 14, 2009 and stated that "Although the Claims Bar Date has passed, under federal law the Receiver may consider claims filed after the Claims Bar Date" if the claimant had no notice of the FDIC receivership and the claim is filed in a timely fashion. Included with the letter was a Proof of Claim Form nearly identical to the Form filled out by Cipponeri, and marked RLS7222. This Form also came with second page which gave instructions for filling out the Form. The instructions specifically stated that "This form is being sent to you in the event you believe the failed institution owes you funds for services rendered or goods purchased prior to the date of closing," and requested documentation for "claims for goods purchased by the former institution" and "claims for services rendered." The body of the letter directed Cipponeri to fill out the Form and "Provide supporting documentation both regarding your claim and your lack of knowledge of the appointment of the Receiver."

On May 27, 2009, FDIC sent Cipponeri another letter "to request that you supplement your claim with proof sufficient to allow the receiver to make a determination. Please provide such supporting evidence as you may have, such as an affidavit or doctor's statement describing the nature of Mr. Cipponeri's actual injuries, together with an affidavit or statement describing

**4**

how the incident occurred and what medical treatment or benefits he received. Please also provide supporting documentation, such as invoices or medical bills, doctor's notes or reports and disability pay stubs, as examples." Doc. 28, Ex. G.  The letter requested the documentation by June 16, 2009; Cipponeri did not comply.  Cipponeri points out that "Nowhere in the [May 27] letter did the FDIC inform Plaintiff that his proof of claim was deemed incomplete, or that the administrative claims process had not been properly initiated by Plaintiff." Doc. 22, Opposition, at 2:24-26.

FDIC sent Cipponeri a letter on September 14, 2009, seeking an extension of the 180-day period FDIC had to evaluate the claim from October 19, 2009 to November 14, 2009.  The letter stated, "If you agree to the requested extension of time, your statutory rights will remain in full force, including the right to file a lawsuit on your claim during the 60-day period beginning on the **earlier** of (1) the expiration of the Extended Determination Date; or (2) the date the claim is disallowed by the Receiver, if it is disallowed....If you do not agree to the requested extension of time, by operation of law your claim will be deemed disallowed and you will have **60 days from the expiration of the Original Determination date to file a lawsuit** on your claim." Doc. 28, Ex. H, emphasis in original.  Cipponeri agreed to the extension on September 21, 2009. Cipponeri sent FDIC a letter on October 15, 2009, asking for a right to sue letter. Doc. 28, Ex. I. FDIC did not respond to the request.  On that same day, the parties held a status conference before Magistrate Judge Beck, informing the court that the administrative process was not yet finished.  FDIC's counsel states "I indicated my position that the claims process must be strictly complied with, pursuant to the applicable code." Doc. 28, Scarborough Declaration, at 5:11-12. There is no indication that FDIC told Cipponeri a failure to provide documentation would be a complete bar to his claim.  A second status conference was held on January 27, 2010, during which FDIC informed the court that the process was completed; the stay was lifted.

Cipponeri finally provided documentation to the FDIC in the form of medical reports on

1  January 29, 2010.[2] Doc. 28, Ex. J. FDIC filed this motion to dismiss on February 5, 2010.

2  Further, FDIC sent Cipponeri a letter on February 9, 2010, titled "Notice of Disallowance of

3  Claim" in which it stated "Pursuant to 12 U.S.C. Section 1821(d)(6), if you do not agree with this

4  disallowance, you have the right to file a lawsuit on your claim...within 60 days from the date of

5  this notice." Doc. 35, Ex. A. The February 9, 2010 letter is confusing as FIRREA states that the

6  60-day window for filing suit starts running from whichever comes first, the end of the 180-day

7  period or formal disallowance. 12 U.S.C. §1821(d)(6)(A). That rule is reiterated in the

8  September 14, 2009 letter. Indeed, by the time the February 9, 2010 letter was sent, the 60-day

9  window had already closed as it started running from November 14, 2009.

10  FDIC argues that "Plaintiff submitted a Proof of Claim form to the FDIC, without the

11  required proof. Instead, Plaintiff merely attached a copy of his Complaint and Statement of

12  Damages to the Proof of Claim Form...Both were conclusory and neither provided the proof

13  required." Doc. 27, Brief, at 8:11-15. Cipponeri argues that he filled out the Proof of Claim

14  Form fully and that FDIC never informed him that a failure to provide documentation would

15  result in a complete bar of his claim. Doc. 33, Opposition, at 5:1-4. Cipponeri also argues that

16  the February 9, 2010 letter renders FDIC's motion moot as it specifically advises Cipponeri that

17  he had 60 days in which to file suit. Doc. 33, Opposition, at 7:3-11.

18  The letters FDIC sent Cipponeri suggesting he could sue in federal court are not

19  dispositive. FIRREA's administrative exhaustion requirement is not subject to waiver by the

---

[2] FDIC's counsel, as part of FDIC's reply to the opposition to the motion, has stated, "I became attorney of record after the FDIC was appointed receiver, on February 17, 2009. Prior to my becoming attorney of record, counsel for The Bank subpoenaed Plaintiff's medical records. After I became attorney of record, his medical records were produced to my office. I received between 1.5 and 2 feet worth of medical records. By the time I received the medical records the matter was stayed in State Court and was later stayed in Federal Court. I did not immediately review the medical records and did not understand nor do I believe that it was my job to review Plaintiff's medical records to determine which such records support his claim. My role in this matter is as counsel in this litigation. I do not participate in the review of claims submitted to the FDIC." Doc. 38, Supplemental Scarborough Declaration, at 2:13-21. Cipponeri has not argued that these records in the hands of FDIC attorneys should be considered documentation for the purpose of exhaustion. Thus, the court does not consider those documents in this order.

FDIC-R. See, e.g. Resolution Trust Corp. v. W.W. Dev. & Mgmt., 73 F.3d 1298, 1302 (3rd Cir. 1996) (no subject matter jurisdiction even though RTC sent letter stating claimant had 60 days to file suit); Brady Dev. Co. v. Resolution Trust Corp., 14 F.3d 998, 1007 (4th Cir. 1994) ("The doctrines of waiver and estoppel do not apply"); FDIC v. Scott, 125 F.3d 254, 258-59 (5th Cir. 1997); Tri-State Hotels v. FDIC, 79 F.3d 707, 716 (8th Cir. 1996); Paul v. FDIC, 91 F.3d 110, 112 (11th Cir. 1996) (court found no subject matter jurisdiction despite FDIC's position that "Paul's claim was, in fact, untimely, but that the legal consequences of this jurisdictional fact can be waived"); but see Boos v. Runyon, 201 F.3d 178, 182 (2nd Cir. 2000) (characterizing Carlyle Towers Condominium Ass'n, v. FDIC, 170 F.3d 301 (2nd Cir. 1999) as holding "under [FIRREA], the complete failure to take the appropriate administrative action constituted a jurisdictional bar to suit in federal court, but merely filing such an action late, after the agency's limitation period had expired, did not deprive the district court of jurisdiction"). Neither the fact that FDIC-R may have indicated to Cipponeri that he could sue nor the fact that Cipponeri may have corrected any insufficiency after the deadline would save subject matter jurisdiction.

The determinative question is whether Cipponeri's initial submission of a filled-out Proof of Claim Form to FDIC and failure to supplement it adequately exhausted administrative remedies. On this issue, the case law appears to be silent. FDIC has not provided any case law or regulation that states a filed claim fails to exhaust administrative procedures when the FDIC asks for additional information in addition to a Proof of Claim Form. Cipponeri states, "None of the cases cited by FDIC apply here as each case involves complete inaction of the part of plaintiff." Doc. 33, Opposition, at 5:27-28. While that statement is a slight exaggeration, its essence with respect to the salient point is true. See McCarthy v. FDIC, 348 F.3d 1075, 1077 (9th Cir. 2003) (plaintiff did not file any administrative claim); Intercontinental Travel Mktg. v. FDIC, 45 F.3d 1278, 1281 (9th Cir. 1994) ("ITM did not file an administrative claim with the FDIC until...after the FDIC filed its motion for summary judgment"); Freeman v. FDIC, 56 F.3d 1394, 140 (D.C. Cir. 1995) ("It is undisputed that the Freemans did not file any of these claims through the administrative claims process"); Stamm v. Paul, 121 F.3d 635, 637 (11th Cir. 1997) (plaintiffs did not file any administrative claim); Feise v. Resolution Trust Corp., 815 F. Supp.

7

1  344, 346 n.2 (E.D. Cal. 1993) ("Plaintiff failed to submit a proof of claim form to the RTC prior
2  to filing this action"); Brewer v. Indymac Bank, 2009 U.S. Dist. LEXIS 81657, *6 (E.D. Cal.
3  Sept. 8, 2009) (plaintiffs "failed to submit any evidence that the Proof of Claim form was timely
4  filed").  Beyond case law, there are two considerations which point in opposite directions: the
5  lack of regulations that requires presentation of evidence and the reason administrative
6  procedures were put in place under FIRREA.
7       FDIC states "It is Plaintiff who must submit a claim, including the required
8  documentation he believes supports his claim." Doc. 37, Reply, at 4:2-3.  FDIC repeatedly
9  insinuates that more than filling out the Form, presentation of evidence is necessary to
10 administrative exhaustion but provides no legal citation to that effect.  The text of FIRREA is
11 largely silent in this regard.  The only specific reference states that upon taking receivership the
12 FDIC must "promptly publish a notice to the depository institution's creditors to present their
13 claim, together with proof, to the receiver." 12 U.S.C. §1821(d)(3)(B)(i).  The statute says
14 nothing more about evidence being a necessary part of a claim.  FDIC provides no citation to any
15 actual regulations. See Doc. 27, Brief; Doc. 37, Reply.  For claims regarding payments on
16 guaranteed debt under the Temporary Liquidity Guarantee Program, FDIC proposed regulation
17 that stated "Holders of debt shall file a claim with the receiver of a failed insured depository
18 institution that is a participating entity within ninety days after the FDIC publishes a notice to
19 creditors of the failed financial institution to present claims pursuant to 12 U.S.C. 1821(d)(3)(B).
20 The FDIC will consider the proof of claim, if timely filed, and will make a determination of the
21 amount guaranteed within 180 days of the filing of the proof of claim." Temporary Liquidity
22 Guarantee Program, 73 Fed. Reg. 64179, 64190 (Oct. 29, 2008) (to be codified at 12 C.F.R.
23 §370.12(b)(1)(i)).  That language makes no reference to evidence, but it does not appear to have
24 been adopted.  The regulation currently reads "Such demand must be accompanied by a proof of
25 claim, which shall include evidence, to the extent not previously provided in the Master
26 Agreement, in form and content satisfactory to the FDIC." 12 C.F.R. §370.12(b)(3)(i) and (ii).
27 FDIC makes no reference to 12 C.F.R. Part 360, Resolution and Receivership Rules.  The court
28 can find no regulatory language applying to Cipponeri's claim that discusses evidence as part of a

8

proof of claim.

Looking directly at the Proof of Claim Form and the attached instructions shows that it was designed for claimants who "believe the failed institution owes you funds for services rendered or goods purchased." The Form does not ask for any documentation for a personal injury claim while asking for documentation for claims based on "goods purchased by the former institution" and "services rendered." See Doc. 28, Ex. D. Cipponeri filled out the Form completely. The Form did not direct him to present evidence of his personal injury claim. In this circumstance, the Form is clearly faulty. After Cipponeri filed his form, FDIC contacted Cipponeri by letter of May 27, 2009, seeking documentation from Cipponeri for his claim. Cipponeri did not respond to these requests for months, but it is unclear whether FDIC made clear that failure to provide documentation would cut off access to the courts.

However, the goal of FIRREA's administrative procedures is more than to provide simple notice of a claim; it is to allow the FDIC to evaluate the claim and avoid the courts if possible. "FIRREA's exhaustion scheme serves an important purpose - allowing the FDIC 'to perform its statutory function of promptly determining claims so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation.'" Intercontinental Travel Mktg. v. FDIC, 45 F.3d 1278, 1285 (9th Cir. 1994), citing Rosa v. Resolution Trust Corp., 938 F.2d 383, 396 (3rd Cir. 1991). "The claims determination procedure set forth in subsection (l) creates a system which not only meets the concerns raised by the Coit case, but also enables the FDIC to dispose of the bulk of claims against failed financial institutions expeditiously and fairly. The exhaustion requirements should lead to a large number of claims being resolved without resort to further procedures. In addition, the administrative procedures, including review procedures, created by the FDIC, if made sufficiently attractive to claimants, should lead to a large number of claimants agreeing to present their claims through these forums rather than in court. Thus, the claim resolution process established in this section should allow the FDIC to quickly resolve many of the claims against failed financial institutions without unduly burdening the District Courts." H.R. Rep. No. 101-54(I) at 419 (1989) reprinted in 1989 U.S.C.C.A.N. 86, 215. "[T]he dual purpose behind requiring exhaustion of claims before suit can be filed is: (1) To minimize

costs to the receivership estate and to the legitimate claimants who share in the distributions from the estate, and (2) to minimize the burden on federal courts by avoiding needless litigation." Procedures To Be Used With Regard to Claims Based Upon Acts or Omissions of the Receiver, 59 Fed. Reg. 10663, 10664 (March 7, 1994).  Cipponeri's submission arguably did not provide enough information for FDIC to fairly evaluate his claim.  The completed Proof of Claim Form put FDIC on notice as to the nature of Cipponeri's claim, but did not provide any evidence for FDIC to determine whether the claim was meritorious.  In fact, it becomes clear that Cipponeri sought to essentially bypass the administrative process and proceed directly to court.  He only provided a copy of his complaint and refused to submit any documentation that might have allowed FDIC to fairly evaluate his injury and pay his claim.  The only thing he asked for was a right to sue notice, which FIRREA does not provide for.  Cipponeri held off providing documentation of his claim until the stay was lifted.

On balance, the court finds that Cipponeri has not exhausted the administrative claims process.  In this case, Cipponeri provided no evidence whatsoever of his claim.  FDIC requested documentation in the April 20 and May 27, 2009 letters which Cipponeri ignored.  Other claimants, like CareWest, generally comply with FDIC's requests for supplemental information.  See, e.g. Nants v. FDIC, 864 F. Supp. 1211, 1216 (S.D. Fla. 1994) (in background of the case, FDIC sent claimant a notice of incomplete claim which claimant supplemented).  It is true that FIRREA's rules are unclear; there is only a passing reference to proof in the FIRREA statute.  FDIC provided Cipponeri with misleading information, adopting some legal positions contrary to that expressed in its letters.  "FDIC's allegations that Plaintiff failed to comply with the claims procedure is wholly contradictory to [FDIC's] actions and communications with Plaintiff throughout the claims process." Doc. 33, Opposition, at 6:15-18.  Nevertheless, Congress purposefully established FIRREA's rules to be strict in order to streamline the resolution of claims against defunct banks.  In this circumstance, FDIC could not fairly evaluate Cipponeri's claim as no documentation was submitted.  Even minimal documentation might have allowed FDIC to evaluate the claim.  Thus, the purposes of FIRREA's exhaustion requirement could not be satisfied with Cipponeri's submissions.  The Third Circuit acknowledged, "we are concerned

with FIRREA's complex and, in practice, draconian jurisdictional provisions....the RTC's actions encouraged [the claimant] to believe that its claim was under serious administrative consideration as the statutory period for judicial review expired. Furthermore, we acknowledge that the statute arguably encourages the RTC to avoid making determinations and, in so doing, catch creditors dozing. But, our hands are tied under the statutory scheme." Resolution Trust Corp. v. W.W. Dev. & Mgmt., 73 F.3d 1298, 1303 and 1307 (3rd Cir. 1996), citations omitted.  FIRREA's rules are not ideal but they must be followed.  However, given their lack of clarity and detail, and the unique facts in this case, Cipponeri may find appeal fruitful.

### IV. Order

Defendant FDIC's motion to dismiss Plaintiff Cipponeri's claims for lack of subject matter jurisdiction is GRANTED.  Plaintiff in Intervention CareWest's claims are not affected.

IT IS SO ORDERED.

Dated:  June 23, 2010                                                    _____
                                                                                                    CHIEF UNITED STATES DISTRICT JUDGE